UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN E. MONTGOMERY,<br><br>                Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>                Defendant. | Case No.: 16-CV-1735 JLS (PCL)<br><br>**ORDER: (1) OVERRULING PLAINTIFF'S OBJECTIONS; (2) ADOPTING REPORT AND RECOMMENDATION; (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF Nos. 25, 26, 29) |

      Presently before the Court are Plaintiff's Motion for Summary Judgment ("Pl.'s MSJ"), (ECF No. 25), Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Def.'s MSJ"), (ECF No. 26), and Plaintiff's Reply to Defendant's Opposition ("Pl.'s Reply"), (ECF No. 27). Magistrate Judge Peter C. Lewis issued a thorough, eighteen-page Report and Recommendation ("R. & R."), (ECF No. 29), recommending the Court deny Plaintiff's Motion and grant Defendant's Motion. Plaintiff untimely filed Objections to Judge Lewis's Report and Recommendation, ("Pl.'s Objs."), (ECF No. 31). Having considered all of these materials, as well as the

Administrative Record ("A.R."), (ECF No. 23), underlying these proceedings, the Court: (1) **OVERRULES** Plaintiff's Objections, (2) **ADOPTS** Judge Lewis's Report and Recommendation, (3) **DENIES** Plaintiff's Motion for Summary Judgment, and (4) **GRANTS** Defendant's Motion for Summary Judgment.

# BACKGROUND

Judge Lewis's Report and Recommendation contains a thorough and accurate recitation of the procedural history and Administrative Record underlying the Parties' cross-motions for summary judgment. (*See* R. & R. 2–14.) This Order incorporates by reference the background as set forth therein.

# LEGAL STANDARDS

## I. Review of Report and Recommendation

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district court's duties regarding a magistrate judge's report and recommendation. The district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c); *see also United States v. Raddatz*, 447 U.S. 667, 673–76 (1980). In the absence of a timely objection, however, "the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note (citing *Campbell v. U.S. Dist. Court*, 510 F.2d 196, 206 (9th Cir. 1974)).

## II. Review of Application for Disability Benefits Under the Social Security Act

### *A. Standard for Judicial Review of an ALJ Decision*

Section 1631(c)(3) of the Social Security Act and 42 U.S.C. § 1383(c) permit unsuccessful applicants to seek judicial review of the Commissioner's final agency decision. The court may overturn the Commissioner's decision denying disability benefits only if the ALJ's findings are (1) based on legal error or (2) not supported by substantial evidence in the record. *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000).

Substantial evidence is defined as "more than a mere scintilla but less than a preponderance." *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (internal quotations and citations omitted). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Id.* But the Commissioner's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998). Rather, the court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Nonetheless, "the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Vasquez v. Astrue*, 547 F.3d 1101, 1104 (9th Cir. 2008) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that "the ALJ's error was 'inconsequential to the ultimate nondisability determination.' " *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).

### *B. Procedure for Determining Eligibility for Disability Benefits*

To qualify for disability benefits, an applicant must show that (1) he suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and that (2) the impairment renders the applicant incapable of performing the work that he previously performed or any other substantially gainful employment that exists in the national economy. *See* 42 U.S.C. § 423(d)(1)(A). Section 416.920 of Title 20 of the Code of Federal Regulations sets out a five-step process to determine if an applicant meets the two requirements. The ALJ considers whether a claimant is disabled by determining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets

or equals" one of the listings in the regulations found in 20 C.F.R., part 404, subpart P, appendix 1; (4) whether, given the claimant's "residual functional capacity," ("RFC") the claimant can still do his or her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); 20 C.F.R. §§ 404.1520(a), 416.920(a). Social Security Act ("SSA") regulations define residual functional capacity as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. 404, subpt. P, app. 2 § 200.00(c); *see also Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998). As part of step five, the Commissioner considers whether there are a significant number of jobs in the national economy that the claimant can perform. 20 C.F.R. §§ 416.920(a)(4)(v), 416.966; *see also Tackett v. Apfel*, 180 F. 3d 1094, 1098–99 (9th Cir. 1999). In making this determination, the ALJ must consider the claimant's RFC, age, education, work experience, and either the Medical-Vocational Guidelines or the testimony of a vocational expert. 20 C.F.R. §§ 416.945, 416.969, 416.969(a); *see also Tackett*, 180 F.3d at 1101. The claimant bears the burden of proof at steps one through four. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

## ANALYSIS

### I. Summary of the Report and Recommendation's Conclusions

Judge Lewis recommends denying Plaintiff's Motion for Summary Judgment and granting Defendant's Cross-Motion for Summary Judgment. (R. & R. 1–2.) Because the primary issue implicated by each motion is whether the ALJ committed reversible error in denying Plaintiff's application for benefits, Judge Lewis addressed both motions together.[1]

---

[1] Plaintiff actually makes two arguments in his Motion for Summary Judgment. First, he argues default judgment should be entered against Defendant because Defendant failed to timely answer Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(a)(i). (Pl.'s MSJ 1–2.) Second, Plaintiff argues his disabilities meet the definition for disability under 42 U.S.C. § 405(g) (the SSA) because his disabilities meet the definitions of disability in either the Americans with Disabilities Act ("ADA") or the Federal Housing and Employment Act ("FEHA"). (*Id.* at 5–6.) Judge Lewis addressed only the propriety of Plaintiff's disability argument.

Judge Lewis thoroughly examined the Administrative Record and noted the following. Plaintiff's examining and treating physicians considered Plaintiff's impairments to be only mild or modest limitations. (*Id.*) Plaintiff's subjective complaints regarding his impairments were not credible and were belied by the conservative course of treatment he continually underwent. (*Id.* at 16–17.) In addition to the fact that no medical personnel indicated Plaintiff was totally disabled, Plaintiff's own behavior affirms he can work. (*Id.* at 17.) In particular, Plaintiff both attended college as a full-time student five days a week after the disability onset date and injured himself playing basketball after the onset date. (*Id.*) Based on these facts and the necessary social-interaction and physical requirements implicated by each, Plaintiff's daily activities and ability to interact with others were not sufficiently impacted by his mental impairments, contrary to Plaintiff's and his representative's assertions. (*Id.*) Finally, the Administrative Record indicates Plaintiff was more focused on obtaining SSI benefits than improving his conditions and was likely "malingering for secondary gain." (*Id.* at 18.) Taken together, Judge Lewis concluded that these facts constituted "more than substantial evidence" that the ALJ properly classified Plaintiff as not disabled. (*Id.* at 17–18.)

## II. Summary of Plaintiff's Objections[2]

Plaintiff objects to Judge Lewis's adoption of the ALJ's findings with respect to steps three, four, and five of the disability eligibility inquiry. As to step three, Plaintiff argues that the ALJ erred by concluding that Plaintiff's impairments did not meet or equal at least one of the impairments found in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Pl.'s Objs. 5–6.) As to step four, Plaintiff argues that the ALJ's finding respecting Plaintiff's residual functional capacity is controverted by medical examinations Plaintiff had after the ALJ decision was rendered. (*Id.* at 6.) As to step five, Plaintiff argues that the ALJ erred in

---

[2] Plaintiff filed an Objection to Judge Lewis's Report and Recommendation one day past the deadline by which Objections were to be filed. Although Plaintiff did not move for an extension of time, the Court nonetheless considers this one-day deficiency to be harmless and therefore considers Plaintiff's Objection to be timely filed.

finding that there are significant jobs in the national economy that Plaintiff could perform because Plaintiff has no past relevant work experience and his impairments have become worse since the date of his original application for benefits. (*Id.* at 7.) In addition, Plaintiff objects to Judge Lewis's recounting of why Plaintiff went on a hunger strike while he was in prison. (*Id.*) Finally, Plaintiff contends the "Magistrate Judge erred in whole by not reading the whole record and getting the facts of the case." (*Id.* at 8.)

**III. Court's Analysis**

Because Plaintiff's Objections could be construed as challenging the entirety of Judge Lewis's Report and Recommendation, the Court reviews both Judge Lewis's Report and Recommendation and the underlying motions *de novo*. First, the Court considers Plaintiff's two arguments in his Motion for Summary Judgment. Next, the Court considers whether Judge Lewis properly concluded that the ALJ's finding of "not disabled" was based on substantial evidence and therefore should not be overturned. Finally, the Court considers Plaintiff's arguments in his Objection.

*A. Plaintiff's Arguments in His Motion for Summary Judgment to Reject the ALJ Decision*

As a threshold matter, Plaintiff argues Defendant failed to timely file an answer pursuant to Federal Rule of Civil Procedure 12(a)(1)(A). (Pl.'s MSJ 1–2.) However, Federal Rule of Civil Procedure 12(a)(2) is the applicable rule—when an officer of a United States Agency is sued only in an official capacity the officer must file an answer to a complaint within sixty days after service on the United States attorney.

Plaintiff argues that Defendant in the present case did not timely file an answer because Defendant filed her answer on January 3, 2017 and service of process was completed on October 13, 2016. (Pl.'s MSJ 2.) However, Plaintiff misunderstands the date on which service of process was completed. October 13, 2016 is the date on which the United States Marshal received the summons, not the date on which the Marshal served the United States attorney in accordance with 28 U.S.C. §1915(d). (*See* Process Receipt and Return, ECF No. 16 (listing "Signature of Authorized [United States Marshals Service]

Deputy" "acknowledg[ing] receipt for the total number of process indicated" as "10/13/16").) The date of service on the civil process clerk for the U.S. attorney's office was November 4, 2016, (*id.* (listing "[n]ame and title of individual served" with corresponding date of "4 NOV 2016" at "09:11 . . . am"), which is exactly sixty days before the Answer was filed. Accordingly, Plaintiff's threshold argument has no merit.

Turning to the substance of the ALJ's decision below, Plaintiff contends that the ALJ's analyses under steps three, four, and five each constituted reversible error.[3] The Court does not agree. At a broad level, the ALJ, in accordance with 20 C.F.R. § 416.920, went through the five step process and made findings supported by substantial evidence with respect to steps three through five that are in dispute. At each step, the ALJ satisfied the requirement to state both his reasoning and the evidentiary support for his interpretation of the medical evidence. *Tackett*, 180 F.3d at 1102. Thus, the ALJ did not commit any general legal error.

The Court now addresses the specifics of each disputed step in turn.

*(i) Step Three: Whether One of Plaintiff's Impairments Meets or Medically Equals an Impairment in the "Listing"*

The ALJ found that Plaintiff does not have an impairment or a combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (the "Listing"). The ALJ concluded Plaintiff had the following physical impairments defined under the SSA: back pain; right elbow, hand, and wrist impairment; nerve damage in the right elbow; gastroesophageal reflux disease ("GERD"); and status post right foot fracture. (A.R. 38.) The ALJ also concluded that Plaintiff had the following mental impairments defined under the SSA: dysthymia or a mood disorder not otherwise specified (mood disorder NOS) and substance abuse. (*Id.*) Before coming to this

---

[3] Plaintiff also argues his disabilities meet the SSA criteria because they meet the separate disability criteria for either the ADA or the FEHA. (Pl.'s MSJ 5–6.) In support of this argument, Plaintiff discusses "legislative intent to maintain continuity of the definition . . . ." (*Id.* at 8.) Judge Lewis properly disposed of this argument by explaining that the SSA has its own definition of disability for purposes of granting SSI benefits that cannot be surmounted by Plaintiff's legislative intent argument. (R. & R. 16.)

conclusion, the ALJ examined the medical documents in the A.R., which included various psychiatric evaluations by multiple doctors, Chronological Interdisciplinary Progress Notes ("chronos") detailing Plaintiff's psychological profile while incarcerated, Client Episode Profile (Parole) records ("parole notes") detailing Plaintiff's psychological profile post-release, and a physical evaluation by Dr. Thomas J. Sabourin. (*Id.* at 36; R. & R. 3–5.) The ALJ also adopted the expert testimony of consulting clinical psychologist Dr. Kent Layton, given at the hearing on May 26, 2011, regarding Plaintiff's mental impairments. (A.R. 37–38.)

If an impairment meets all the criteria of at least one of the impairments in the Listing, then the agency considers the impairment severe enough to prevent the claimant from doing any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 416.925(a). However, in the present case the ALJ found none of the physical or mental impairments met or equaled one of the listings. The ALJ based this conclusion on his own review of the medical records as well as expert analysis provided by Dr. Layton. (A.R. 38.) Dr. Layton—who listened to all of Plaintiff's testimony, reviewed all the medical evidence, and is familiar with the Social Security Administration's regulations, (*id.* at 91)—testified that although Plaintiff's two mental impairments, and his mood disorder NOS and substance abuse disorder, mildly restrict his daily activities, moderately limit his ability to socialize, and moderately limit his ability to maintain concentration, none of the limitations met all the criteria of one of the listings. (*Id.* at 98–99.) In addition, Dr. K. Loomis, after reviewing Plaintiff's medical records and completing a Psychiatric Review Technique form on August 31, 2010, similarly concluded that the impairments did not meet or equal any listing. (*Id.* at 620–23.) Dr. Loomis's conclusion was in turn affirmed by Dr. Kevin Gregg, who examined Plaintiff on November 3, 2010. (*Id.* at 637.) Dr. Mounir Soliman's (another doctor who examined Plaintiff on March 19, 2008, for the Department of Social Services) examination notes further support Dr. Layton's testimony with respect to Plaintiff's ability to work. Although Dr. Soliman diagnosed Plaintiff with bipolar disorder, he concluded that Plaintiff's "symptoms are considered treatable and manageable with

appropriate psychiatric treatment" and that Plaintiff would be "able to withstand the stress and pressures associated with an eight-hour workday . . . and day-to-day activities." (*Id.* at 536.)

The Court finds there is substantial evidence to support the ALJ's conclusion that none of Plaintiff's mental impairments met all the criteria of any of the listings. The Court may rely on Dr. Layton's testimony in so finding because "opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Here, Dr. Layton's testimony that Plaintiff's mental impairments do not meet or equal one of the listings is supported by and consistent with other substantial evidence in the record.

For instance, in regards to Plaintiff's alleged substance abuse problem, Plaintiff told a consulting psychologist in April 2008 that he did not have an alcohol or drug problem. (A.R. 38.) In one chrono, Plaintiff told an interviewing physician that he had not used cocaine since 2001. (*Id.* at 516.) In a parole note dated September 28, 2010, Plaintiff claimed he had been sober for the last seven years. (*Id.* at 639–40.) In another parole note dated September 13, 2010, Plaintiff claimed he last used cocaine and methamphetamine three years prior and denied having a current drug problem. (*Id.* at 646.) Dr. Sabourin noted during Plaintiff's orthopedic exam on November 29, 2010, that Plaintiff "does not drink or use drugs." (*Id.* at 659.)

With respect to the mood disorder NOS, one parole note indicates that, after the disability onset date, Plaintiff was attending school full-time, doing well with his organizational skills, and showing no signs of psychosis. (*Id.* at 481.) In a parole note dated September 13, 2010, Plaintiff denied having current mental health symptoms, while at the same time discussing both his attempted suicide while in prison because he thought the guards were out to kill him and his compulsive desire to clean things. (*Id.* at 646.) Despite Plaintiff's complaints about his mental conditions, the examiner concluded that Plaintiff did not have either bipolar disorder or any other disorder that meets one of the SSA listings,

and mentioned that Plaintiff "feels his meds control his symptoms." (*Id.* at 647.) Insofar as this examiner's negative diagnosis for bipolar disorder conflicts with Dr. Soliman's positive diagnosis, the ALJ could still reasonably infer that this examiner's conclusion was correct from the fact that other psychiatrists did not diagnose Plaintiff with bipolar disorder. *See Molina*, 674 F.3d at 1111 (stating that "when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record"). And in any case, Dr. Soliman did not opine on whether any of Plaintiff's impairments met or equaled a listing. Thus, Dr. Layton's testimony is amply supported by direct examination evidence in the record and corroborated by Dr. Loomis's and Dr. Gregg's conclusions. (*Id.* at 620, 637.)

Next, the Court finds there is substantial evidence to support the ALJ's conclusions with respect to Plaintiff's physical impairments, and in so doing, looks principally to Dr. Sabourin's direct examination notes. An examining physician's opinion by itself constitutes substantial evidence if it is more than conclusory and supported by at least some clinical observation. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). And in the present case, Dr. Sabourin wrote in his notes that all of Plaintiff's wounds were "well healed[,]" that he had "no significant weakness or neurological deficit[,]" that he had full range of motion of his back with no atrophy, that his injuries to his right foot and right hand did not show any sign of swelling, and that, in general, Plaintiff was doing "quite well" at the time of his examination. (A.R. 662.) Dr. Sabourin conducted numerous physical evaluations of Plaintiff, including measurements of Plaintiff's limb sizes, a cervical spine examination, measurements of Plaintiff's grip strength, a lumbar spine examination, extremity examinations, and a neurological examination measuring deep tendon reflexes, sensation to touch, and motor strength. (A.R. 659–61.) Accordingly, because Dr. Sabourin's examination was thorough and replete with technical tests and measurements, it was not conclusory and therefore by itself constitutes substantial evidence supporting the ALJ's decision that none of Plaintiff's physical impairments met one of the listings.

///

Furthermore, in addition to these examinations and testimony, the record as a whole supports the ALJ's conclusion. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (stating that "we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence" (internal quotation marks and citation removed)). Here, more than a quantum of evidence affirms the ALJ's findings with respect to both the physical and mental impairments. None of the consulting, examining, or treating physicians' opinions contained within the record state that at least one of Plaintiff's ailments meets the elements of a listing. (*See generally* A.R.) The evidence mentioned above is therefore uncontroverted, substantial evidence supporting the ALJ's findings.

Moreover, Plaintiff does not point to any evidence from the relevant time period that contradicts the ALJ's findings. (*See generally* Pl.'s MSJ; Pl.'s Objs.) Plaintiff only points to medical records and examinations from late 2015 through early 2017, which, variously, indicate a diagnosis of schizoaffective disorder, medications prescribed for anxiety and psychosis, an inability to lift more than nineteen pounds, and an inability to work with the right hand. (*See* Pl.'s MSJ 14–24.) However, "under 42 U.S.C. § 405(g), remand is warranted only if there is new evidence that is material and good cause for the late submission of the evidence." *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001), *as amended* (Nov. 9, 2001). New evidence is material if it "bear[s] directly and substantially on the matter in dispute[,]" and if there is a "reasonabl[e] possibility that the new evidence would have changed the outcome of the . . . determination . . . ." *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir.1984) (internal quotation marks and citations omitted) (emphasis omitted).

Here, Plaintiff's new evidence is not material because it involves "different medical evidence, a different time period, and a different age classification [(some of the records in the new evidence indicate dates on which Plaintiff was older than 49 and therefore no longer in the age range of 18–49 in which he was classified by the ALJ)]." *See Bruton*, 268

F.3d at 827; *see also Engle v. Barnhart*, 55 F. App'x 429, 432 (9th Cir. 2003) (deeming nonmaterial newly submitted evidence that related to a time period after the ALJ's decision was rendered). In this case, the ALJ rendered his decision on July 6, 2011. (A.R. 32.) None of the medical documents attached to Plaintiff's Motion for Summary Judgment mention any medical records predating 2014. (*See generally* Pl.'s MSJ.) This is not a case in which new testimony or a new doctor's report is relevant because it considers anew medical evidence from the relevant time period that was previously inadequately reviewed. *See Booz*, 734 F.2d at 1380 (addressing a new doctor's report from 1981 that considered medical tests from years prior to 1979 and concluded that the plaintiff was totally disabled from employment in 1975, thereby contradicting the ALJ's decision denying benefits rendered in 1979). Moreover, the additional documents comprising the new evidence merely note Plaintiff's present day conditions, they do not express any conclusion contradicting the ALJ's findings with respect to any of the five steps. Therefore, all of Plaintiff's evidence postdating the ALJ decision is immaterial to the Court's review of that decision.

*(ii) Step Four: Plaintiff's Residual Functional Capacity to Perform Work*

After concluding that none of Plaintiff's impairments automatically qualified him as disabled under the SSA because none of them met or equaled a listing, the ALJ proceeded to step four. At step four, the ALJ first concluded that Plaintiff had no past work experience, (A.R. 38–39), and then concluded that Plaintiff had the RFC to

> lift or carry 25 pounds frequently and 50 pounds occasionally; stand and/or walk for a total of about six hours out of an eight-hour workday; sit for a total of about six hours out of an eight hour workday; is restricted to frequent climbing, balancing, stooping, kneeling, crouching, and crawling; and mentally limited to work with no public contact and minimal contact with co-workers.

(A.R. 38).

As an initial matter, the Court finds that the ALJ's conclusion demonstrates that in determining Plaintiff's RFC the ALJ complied with the regulatory requirement to evaluate Plaintiff's ability to undertake sustained work activity. *See Reddick*, 157 F.3d at 724 (noting requirement to "address claimant's ability to undertake sustained work activity"). And, moreover, there is substantial evidence in the record to support the ALJ's determination. The ALJ's conclusion was based on the testimony and medical reports discussed above. For example, considering Plaintiff's RFC with respect to his physical limitations, the ALJ adopted Dr. Sabourin's "Medical Source Statement" contained in his examination notes, which states nearly verbatim the ALJ's RFC conclusion. (*See id.* at 662.) Considering Plaintiff's RFC with respect to his mental limitations, the ALJ adopted Dr. Layton's testimony, (*id.* at 38), which states that Plaintiff can perform complex tasks in a non-public work environment with minimal contact with peers, (*id.* at 99). For the same reasons stated *supra* Section I.A.i, these examinations and testimony are substantial evidence supporting the ALJ's conclusion.

Nonetheless, Plaintiff makes allegations regarding his capacity to work that are arguably inconsistent with the ALJ's conclusions. For example, in a parole note dated June 18, 2007, Plaintiff claimed he was diagnosed with bipolar disorder by a psychiatrist while he was in prison. (*Id.* at 516.) In a "Function Report" from 2007, Plaintiff self-reported that he was unable "to work, sleep, cook and hold a complete thought," (*id.* at 309), and that he could not perform any household chores, (*id.* at 310). In a "Disability Report" dated June 5, 2007, in which Plaintiff was interviewed by a representative from the Social Security Administration, Plaintiff claimed a panoply of ailments, including bipolar disorder, phobias, depression, paranoia, suicidal thoughts, insomnia, lack of focus, racing thoughts, and fear of bugs and spiders. (*Id.* at 322.) In another Disability Report dated February 5, 2008, Plaintiff claimed a fear of crowds, that he attempted suicide a few times, that he was "always up and down[,]" that he "c[ould ]not seem to find a happy medium," and that he had a lot of pain in his back. (*Id.* at 355.) In a Function Report dated February 28, 2008, Plaintiff claimed obsessive-compulsive disorder, chronic low back pain, and carpal tunnel

syndrome. (*Id.* at 360–62.) In a Disability Report dated July 30, 2010, Plaintiff claimed schizoaffective disorder, and additionally reiterated some of the disabilities mentioned in past reports. (*Id.* at 393.) However, Plaintiff mentioned considerably fewer disabilities in his oral testimony from the hearing on May 26, 2011. At that time he stated that he still had back pain, right forearm, and right hand problems, (*id.* at 83); that he was supposed to use a cane to walk, (*id.*); that he attempted suicide multiple times in his cell, including once in February 2010 because he thought prison guards were out to kill him, (*id.* at 85); and that he had obsessive-compulsive disorder "real bad," (*id.* at 86). Plaintiff's two representatives also provided testimony regarding Plaintiff's disabilities and capabilities. (*See generally* A.R.)

However, the ALJ found Plaintiff's subjective complaints not credible. To make such an adverse finding against a claimant, the ALJ must make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ conducts a two-step analysis to assess subjective testimony where, under step one, the claimant "must produce objective medical evidence of an underlying impairment' . . . that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996)). If the claimant meets this threshold, the "ALJ c[an] then reject her testimony only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (stating that affirmative evidence of malingering supports an adverse credibility finding). If the ALJ's adverse credibility finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas*, 278 F.3d at 958.

Here, the ALJ did not err in concluding that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment[,]"

(A.R. 38), because the ALJ both pointed to affirmative evidence of malingering and stated clear and convincing reasons for disbelieving Plaintiff. The ALJ noted that Plaintiff was "diagnosed with rule out malingering of mental illness for secondary gain" by two separate examining physicians. (*Id.* at 38; *see id.* at 516, 642.) In one of those diagnoses, dated June 18, 2007, the psychiatrist wrote that "it has been very obvious during the interview that [Plaintiff] was more focused on how to get SSI than address any mental health issues." (*Id.* at 516.) The ALJ's conclusion that Plaintiff was malingering is supported by substantial, affirmative evidence, and is therefore an independent ground for discrediting Plaintiff's testimony.

However, the ALJ also gave other clear and convincing reasons why Plaintiff's testimony should be disbelieved. First, Plaintiff did not comply at times with his treatment protocol, (A.R. 38). *Tomasetti*, 533 F.3d at 1039 (noting that in determining the credibility of a claimant's subjective complaints, the ALJ may consider the claimant's failure to follow a prescribed course of treatment). Second, Plaintiff made many inconsistent statements concerning his substance abuse, (A.R. 38). *Tomasetti*, 533 F.3d at 1039 (the ALJ may consider the claimant's prior inconsistent statements concerning his disabilities). Third, the ALJ found that "[t]he weight of the [medical] evidence does not support the claims of the claimant's disabling limitations to the degree alleged[,]" that "[t]he claimant has not generally received the type of medical treatment one would expect for a totally disabled individual[,]" and that "[t]he objective medical evidence shows that the medications have been relatively effective in controlling the claimant's symptoms." (A.R. 39.) In addition, Dr. Sabourin remarked in his physical examination notes that Plaintiff "comes in today with severity and duration of his complaints disproportionate to the determinable condition[,]" (*id.* at 662). *Lingenfelter*, 504 F.3d at 1040 (the ALJ may consider whether the alleged symptoms are consistent with the medical evidence). Finally, the ALJ found that the "claimant's allegations of significant limitations are not borne out in his description of his daily activities," because he "is able to cook, clean, shop, and do errands" and attended City College for 5 days a week, (A.R. 38–39). *Lingenfelter*, 504 F.3d

at 1040 (the ALJ may consider whether the claimant engages in daily activities inconsistent with the alleged symptoms). And although the ALJ did not specifically address similar testimony from Plaintiff's two representatives, his conclusions with respect to Plaintiff's subjective complaints constitute substantial evidence supporting the credibility determination. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony") (alterations in original).

In sum, the ALJ's conclusion concerning Plaintiff's RFC is supported by Dr. Layton's testimony and Dr. Sabourin's physical examination, which are both uncontroverted by any other doctor's testimony or notes and are supported by substantial evidence in the record. Insofar as Plaintiff's subjective complaints contradicted the RFC determination, the ALJ did not err in finding that such complaints were not credible.

*(iii) Step Five: Whether Plaintiff Can Make an Adjustment to Other Work*

After determining Plaintiff's RFC and that Plaintiff had no past work experience, the ALJ addressed whether there was other work that Plaintiff could perform, taking into account Plaintiff's RFC, age, education, and the testimony of a vocational expert. (A.R. 39–40.) At this step, the inquiry focuses on whether the claimant can perform work that exists in significant numbers in the national economy. *Tackett*, 180 F.3d at 1100. Proof may be shown through (a) a vocational expert's testimony or (b) by reference to the Medical-Vocation Guidelines. *Id.* at 1101. Here, the ALJ relied on the testimony of a vocational expert. (A.R. 40.)

A vocational expert testifies as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy. *Id.* At the hearing, the ALJ poses hypothetical questions to the vocational expert that "set out all of the claimant's impairments" for the vocational expert's consideration. *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir.

1987). The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record. *See id.* at 1279–80.

Here, vocational expert John Koucher listened to the ALJ's exchange with Dr. Layton regarding Plaintiff's physical and mental impairments. (*See* A.R. 51.) The ALJ then asked Mr. Koucher "what medical or vocational guideline" appropriately corresponded to Plaintiff given that he would be limited to the "medium range of work with postural limitations limiting him to frequent climbing, balancing, stooping, and crouching or crawling and mental limitations requiring him to work in a non-public work environment with minimal contact with co-workers." (*Id.* at 106–07.) Mr. Koucher testified that Plaintiff should be classified under category 20328, which corresponds to a medium range of exertional limitation, and that non-exertional limitations on that category of work would, in Plaintiff's case, be "slight." (*Id.* at 107–08.) Mr. Koucher then concluded that there are significant numbers of jobs in the national economy that Plaintiff can perform, including hand packager, cleaner, and laundry worker. (*Id.* at 108–09.) Plaintiff's representative objected to Mr. Koucher's conclusion by stating that "[Plaintiff] couldn't do those jobs that [Mr. Koucher] said because this arm right here [(Plaintiff's right arm)] is like completely gone." (*Id.* at 110–11.) The ALJ noted that the Plaintiff's only basis for objecting to Mr. Koucher's testimony was Plaintiff's alleged inability to use his right arm up to the point of the elbow. (*Id.* at 112.)

The Court finds that the ALJ did not err in adopting the vocational expert's conclusions. Mr. Koucher listened to Dr. Layton's testimony, during which the parties to the hearing thoroughly discussed Plaintiff's disabilities. And the hypothetical the ALJ posed to Mr. Koucher tracked nearly verbatim the residual functional capacity assessments provided by Dr. Sabourin and Dr. Layton, (*id.* at 106–07), which are each in turn supported by substantial evidence in the record. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (explaining that the ALJ's reliance on testimony the vocational expert gives in response to a hypothetical is proper if the hypothetical contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record).

Given the foregoing, and on *de novo* review, the Court **ADOPTS** in full the Report and Recommendation's conclusion and **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Cross-Motion for Summary Judgment. However, because Plaintiff also objected to specific components of Judge Lewis's Report and Recommendation, the Court briefly addresses Plaintiff's specific objections as well.

### *B. Plaintiff's Arguments in His Objection to the R. & R.*

First, Plaintiff objects to Judge Lewis's finding that Plaintiff's impairments did not meet one of the listings because Plaintiff argues his musculoskeletal impairments meet the criteria in the listing described as "impairment or the inability to perform fine and gross movements effectively on a sustained basis . . . ." (Pl.'s Objs. 5.) The Court overrules this objection because there is substantial evidence in the record supporting the ALJ's finding to the contrary; namely, Dr. Sabourin examined Plaintiff and concluded that Plaintiff's range of motion in all of his limbs and extremities was "grossly normal and painless." (A.R. 660.)

Second, Plaintiff argues that Judge Lewis's affirmance of the ALJ's residual functional capacity determination is refuted by the exhibits Plaintiff attached to his Motion for Summary Judgment. (Pl.'s Objs. 6.) The Court overrules this objection because, as noted above, those exhibits are not material to this review of the ALJ's decision.

And third, Plaintiff argues the ALJ erred at step five by not taking into account that Plaintiff has no past work experience. However, the ALJ did take this into account, and properly proceeded in accordance with the five-step process. (*See* A.R. 107.) Thus, the Court overrules this objection.

Accordingly, the Court **OVERRULES** Plaintiff's Objections.

/ / /
/ / /
/ / /
/ / /
/ / /

## CONCLUSION

Given the foregoing, the Court: (1) **OVERRULES** Plaintiff's Objections, (2) **ADOPTS** Judge Lewis's Report and Recommendation, (3) **DENIES** Plaintiff's Motion for Summary Judgment, and (4) **GRANTS** Defendant's Motion for Summary Judgment. Because this concludes the litigation in this matter, the Clerk **SHALL** close the file.

**IT IS SO ORDERED.**

Dated: August 25, 2017

Hon. Janis L. Sammartino
United States District Judge